2005 NOV -4  A 10: 28

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

PHILLIP HORN,

    Defendant.

CR-S-05-0274-PMP(GWF)

## FINDINGS & RECOMMENDATIONS

    This matter is before the Court on Defendant's Motion to Suppress (#18) filed on September 8, 2005, the Government's Opposition to the Motion to Suppress (#25), and Defendant's Reply to Government's Opposition to Defendant's Motion to Suppress (#29).   A hearing on Defendant's Motion to Suppress (#18) was conducted on November 1, 2005, at which time the Court heard testimony from the arresting police officer Kenneth Rodgers of the Las Vegas Metropolitan Police Department ("Metro") and Defendant Phillip Horn.  An investigator for the Federal Public Defender's Office also testified regarding the production of the audio disc recording of the communication between Officer Rodgers and Metro dispatch pursuant to subpoena.

## STATEMENT OF FACTS

    Defendant Phillip Horn is charged in a one count Criminal Indictment (#1), filed on July 13, 2005, charging him with being an ex-felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), to wit: a "Henry Golden Boy" lever action .22 caliber rifle.  The facts leading to this Indictment are as follows:



1    ·  On April 18, 2005, Officer Rodgers was on patrol duty in the area of Overton, Nevada.  Officer

2    Rodgers has been employed as a police officer by Metro for 24 years.  For the past 17 years, Officer

3    Rodgers has been assigned as a patrol officer in the Northeast area of Clark County, Nevada, covering

4    the rural communities of Overton and Logandale.  Officer Rodgers testified that prior to April 18, 2005,

5    he was acquainted with the Defendant Phillip Horn, who also resides in that rural area.  Officer Rodgers

6    testified that he previously arrested Defendant Horn on several occasions and was personally aware that

7    Defendant Horn was an ex-felon.  Defendant Horn also testified at the hearing that he is a convicted

8    felon and had previously been arrested by Officer Rodgers.

9          Officer Rodgers testified that due to recent burglaries of automatic teller machines ("ATM"), he

10   parked his patrol vehicle, a Ford Expedition, in an un-lit area off State Route 168, near mile marker 1,

11   to observe a nearby credit union building which had an exterior ATM machine.  At approximately 3:40

12   a.m., Officer Rodgers observed an early 1960's model Chevy pick-up truck, with an inoperative right

13   headlight traveling southbound on State Route 168.  Officer Rodgers illuminated the red lights on his

14   patrol vehicle and proceeded to stop the pick-up truck.  Although Officer Rodgers was acquainted with

15   Defendant Horn, there was no testimony that he knew or recognized the Chevy pick-up truck as

16   belonging to Defendant Horn prior to stopping the vehicle.

17         Officer Rodgers testified that he stopped his patrol vehicle approximately 7 yards behind the

18   Defendant's pick-up truck, with his vehicle aligned somewhat to the left of the rear of the pick-up truck

19   so that the high-beam headlight of the patrol vehicle illuminated the rear and left driver's door of

20   Defendant's pick-up truck.  Officer Rodgers also left his flashing red lights on.  He also testified that

21   the patrol vehicle was equipped with a spot light, but did not state whether the spot light was on or

22   pointed toward Defendant Horn's pick-up truck.  There is no dispute that at 3:40 a.m., it was dark and

23   there was no moonlight in the area.  There were no street lights or other artificial illumination in the

24   area other than the lights on the patrol vehicle and Officer Rodgers' hand-held flashlight.

25         Officer Rodgers testified that he went to the driver's side window of Defendant's pick-up truck

26   which was open.  He shined his flashlight into the interior of the pick-up and observed Defendant push

27   the top or tip of a clear plastic bag with a slip seal partially into the crack between the seat back and

28   cushion on the bench seat to the right side of Defendant's body.  Officer Rodgers testified that at this

2

1   time he observed that the bag contained bullet ammunition.  At the suppression hearing, the plastic bag,

2   Exhibit "1", was admitted into evidence, without objection.  It is approximately 4 by 6 inches and

3   appeared to be approximately one-quarter to one-third filled with bullet ammunition.  It has a blue

4   colored slip seal on the top of the bag.

5          Officer Rodgers testified that he asked Defendant Horn for his driver's license, vehicle

6   registration, and proof of insurance.  Defendant Horn handed the officer his driver's license, but stated

7   that his registration and insurance papers had earlier blown out of the vehicle's window.  Officer

8   Rodgers took Defendant Horn's driver license and proceeded back to his patrol vehicle.  Officer

9   Rodgers testified that he contacted Metro dispatch and requested that another Metro officer respond to

10  the scene because he recognized Defendant Horn as a known ex-felon, had observed the plastic bag

11  containing ammunition, and suspected that Defendant had a firearm in the vehicle.

12         After requesting "back-up" assistance, Officer Rodgers testified that, while still located at his

13  patrol vehicle, he prepared several written traffic citations for the inoperative headlight and other

14  equipment violations on Defendant's vehicle.  He then returned to the driver's side of Defendant Horn's

15  pick-up truck.  Officer Rodgers could not recall whether he handed the citations to Defendant Horn at

16  that time.  Officer Rodgers testified that he asked Defendant Horn to step out of the vehicle.  Defendant

17  Horn did so.  Upon exiting the pick-up, Officer Rodgers conducted a pat down search of Defendant

18  Horn's body for the officer's own protection to determine if the Defendant was armed.  The pat-down

19  search did not reveal any firearms or other contraband on Defendant's person.  Officer Rodgers asked

20  Defendant Horn if he had any firearms or drugs in the vehicle and Defendant Horn stated no.  Officer

21  Rodgers then escorted Defendant Horn back to the front of the patrol vehicle where he and Defendant

22  Horn waited for several minutes until Officer Swanson arrived at the scene.

23         Officer Rodgers testified that after Officer Swanson arrived, he left Defendant Horn with

24  Officer Swanson at the patrol vehicle and returned to search Defendant's pick-up truck.  Upon returning

25  to the vehicle, Officer Rodgers observed the plastic bag containing the ammunition on the vehicle seat.

26  He also observed a set of "brass knuckles" on the vehicle seat.  Officer Rodgers proceeded to search

27  the vehicle cab, but did not find any firearms or other contraband.  Officer Rodgers then looked in the

28  rear bed of the pick-up and observed  a long object covered by some clothing lying on top of tools.  He

3

1   touched the covered object with his hand and felt a hard cylindrical object which felt like a gun barrel
2   and also felt an object that felt like the lever of a rifle. He removed the covering clothing and observed
3   the "Henry Golden Boy" lever action .22 caliber rifle.

4         Defendant Horn testified that Officer Rodgers could not have seen the plastic bag in his vehicle
5   when the officer initially approached his driver's side window and asked for his license and vehicle
6   papers. Defendant testified that he was sitting on the plastic bag which was located underneath his right
7   leg or buttock. Defendant Horn also denied that he attempted to push the bag into the crack between
8   the seat and seat-back. He testified that before, or possibly as the officer approached his window, he
9   retrieved his wallet from his right rear pocket and took out his driver's license which he handed to
10  Officer Rodgers. Defendant Horn testified that he remained in his vehicle until Officer Rodgers
11  returned and handed him the citations. He testified the officer told him that signing the citations did not
12  admit guilt and only constituted his promise to appear in court. He testified that the officer did not hand
13  him back his driver's license and he did not believe he was free to leave.

14        Defendant Horn testified that Officer Rodgers asked him to exit the vehicle. Defendant did so,
15  and Officer Rodgers then placed him in handcuffs and escorted him back to the patrol vehicle where he
16  and Officer Rodgers waited until the other officer arrived. Defendant Horn also testified that Officer
17  Rodgers asked him for consent to search the vehicle and he refused to grant such consent. Defendant
18  Horn acknowledged that after he exited the vehicle, the plastic bag containing the ammunition remained
19  on the bench seat of his vehicle where he had left it.

20        Following these events, Defendant Horn was released from custody. On April 25, 2005, Officer
21  Rodgers completed a declaration for an arrest warrant of the Defendant. Defendant was subsequently
22  arrested and thereafter charged in the Indictment discussed above.

23        During the suppression hearing, Defendant's counsel also presented the audio disc recording of
24  the communication between Officer Rodgers and the Metro dispatcher during which he requested back-
25  up assistance. This portion of the communication is brief and not completely or clearly audible, but
26  appears to indicate that Officer Rodgers requested officer back-up assistance because he found
27  "something" in Defendant's vehicle.

28  . . .

4

**DISCUSSION**

The Fourth Amendment secures "the right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures." U.S. Const. Amend. IV. The Fourth Amendment protects reasonable and legitimate expectations of privacy. *Katz v. United States*, 389 U.S. 347 (1967). The Fourth Amendment protects "people not places." *Id.* Evidence obtained in violation of the Fourth Amendment, and evidence derived from it, may be suppressed as the "fruit of the poisonous tree." *Wong Sun v. United States*, 371 U.S. 471 (1963).

     1.    **The Initial Traffic Stop.**

The constitutionality of the initial stop of Defendant's vehicle by Officer Rodgers is not contested in Defendant's Motion. The initial stop clearly did not violate the Fourth Amendment. Officer Rodgers stopped Defendant's vehicle because it had an inoperative headlight. A police officer's decision to stop an automobile is reasonable when the officer has probable cause or reasonable suspicion to believe that a traffic violation has occurred. *Whren v. United States*, 517 U.S. 806 (1996), *citing, Delaware v. Prouse*, 440 U.S. 648, 659 (1979); *United States v. Lopez-Soto*, 205 F. 3d 1101, 1104-05 (9th Cir. 2000). Operating a motor vehicle on a Nevada highway at nighttime without an operable headlight is a violation of N.R.S. 484.545. *See United States v. Spencer*, 1 F.3d 742, 745 (9th Cir. 1992)("There is no doubt that a broken headlight gives an officer cause to stop a motorist.")

     2.    **Detention of Defendant and Subsequent Search of His Vehicle.**

The issue on this Motion is whether Officer Rodgers had probable cause to detain Defendant Horn pending the arrival of Officer Swanson and to then proceed with the search of Defendant's vehicle once the other officer arrived to provide additional security. It is clear from Officer Rodgers' testimony that he intended to search Defendant's vehicle once the other officer arrived. Officer Roger's basis for doing so was his knowledge that Defendant was an ex-felon and his observation of the bag containing ammunition which led him to suspect that there was a firearm in the vehicle.

Probable cause is "a fluid concept turning on the assessment of probabilities and the particular factual context not readily, or even usefully, reduced to a neat set of legal rules," and its existence must be determined by an analysis of the totality of the circumstances surrounding the intrusion. *Illinois v. Gates*, 462 U.S. 213, 232 (1983). Probable cause does not deal with hard certainties, but with

probabilities. *Id.* at 241. The Supreme Court has often reiterated that the long prevailing standard of probable cause protects "citizens from rash and unreasonable interferences with privacy and from unfounded charges of crime," while giving "fair leeway for enforcing the law in the community's protection." *Maryland v. Pringle*, 540 U.S. 366, 370 (2003), *quoting, Brinegar v. United States*, 338 U.S. 160, 176 (1949). The Supreme Court has repeatedly emphasized that "[F]inely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the [probable-cause] decision." *Id.* at 371 (internal quotations marks and citations omitted). The Ninth Circuit has stated that the constitutionality of a traffic stop "is judged under the framework established in *Terry v. Ohio*, 392 U.S. 1, 19-20 (1968), requiring that the scope of an investigative detention 'must be carefully tailored to its underlying justification..., and [may] last no longer than is necessary to effectuate the purpose of the stop.'" *United Sates v. Chavez-Valenzuela*, 268 F.3d 719, 724 (9th Cir. 2001), *amended by*, 279 F.3d 1062 (2002) (quoting *Florida v. Royer*, 460 U.S. 491, 500 (1983)).

In this case, Officer Rodgers stopped Defendant's pick-up truck because it had an inoperative headlight. Had nothing else unusual transpired after the stop, the officer would have been justified in obtaining Defendant's driver's license, vehicle registration and proof of insurance, verifying the same, and issuing Defendant the appropriate traffic citations before sending him on his way. The Defendant handed over his driver's license, but informed Officer Rodgers that his vehicle registration and proof of insurance papers had blown out the window. The Government argues that this was a suspicious circumstance and also supported the officer's suspicion that criminal activity was afoot. Opposition to Motion to Suppress (#25), page 4. The Court is not persuaded that this information was sufficient to create a suspicion that the Defendant was engaged in criminal activity or that the vehicle contained evidence of a crime. Officer Rodgers and Defendant Horn knew each other. Defendant Horn provided Officer Rodgers with his driver's license. Officer Rodgers did not testify that Defendant's inability to produce a vehicle registration or proof of insurance caused him to suspect that the vehicle was stolen. Even if the officer entertained such a suspicion, he was able to verify through contact with Metro dispatch that the Defendant's vehicle was properly registered. The Government also argues that the inference that Defendant Horn possessed illegal contraband in his vehicle "is supported further by the

6

1  fact that Officer Rodgers had prior law enforcement contacts with defendant and was aware he was a

2  convicted felon." Opposition to Motion to Suppress (#25), page 4. This argument, as stated, is clearly

3  over broad to the extent it would suggest that an officer has probable cause to search the vehicle of a

4  person he knows to be an ex-felon – based on that fact alone.

5      The Government also argues that Officer Rodgers' suspicions were reasonably aroused when he

6  looked into Defendant's vehicle and observed him furtively push the bag into the seat crack in an

7  attempt to conceal it. Such furtive movement or gestures, when combined with other specific

8  information known to the officer indicating that the person is engaged in criminal activity, may support

9  a finding of probable cause. *See United States v. Sanders*, 631 F.2d 1309, 1312-1313 (8th Cir. 1980)

10  (officers had information provided by a confidential informant that defendants were engaged in illegal

11  drug transaction; defendants' furtive behavior when officers approached them supported finding of

12  probable cause.) On the other hand, courts have held that absent other specific or articulable

13  information that a person is engaged in criminal activity, allegedly furtive movements by a person

14  stopped for a routine traffic violation do not provide probable cause to detain the person and search the

15  vehicle. *Brown v. State,* 504 S.E.2d 443, 446 (Ga. 1998); *People v. Superior Court*, 91 Cal.Rptr. 729,

16  478 P.2d 449 (1970). As the courts in those cases stated, what the officers perceive as furtive efforts to

17  conceal something may, in fact, be completely innocent conduct.

18      Officer Rodgers, however, did not attempt to justify his conduct in detaining Defendant Horn

19  and in subsequently searching his pick-up truck based on the Defendant's allegedly furtive behavior.

20  Officer Rodgers' testimony, which is disputed by Defendant Horn, was that his attention was attracted

21  to Defendant Horn's conduct in pushing the plastic bag into the crack. At that time, Officer Rodgers'

22  testified that he saw the bag and also saw that it contained bullets. This observation caused him to

23  suspect that there was a firearm in the vehicle, which combined with his knowledge that Defendant

24  Horn was a convicted felon, would constitute a crime. Based on this observation, Officer Rodgers

25  decided to call for back-up officer support, to request Defendant to exit the vehicle and to then detain

26  him at the patrol vehicle until the other officer arrived. Absent this observation, it would have arguably

27  only been reasonable for Officer Rodgers to issue traffic citations to Defendant and then send him on

28  his way, without further intrusion into his right of privacy. *See e.g., United Sates v. Chavez-Valenzuela,*

1   *supra.*

2       The issue, therefore, is whether the plastic bag containing ammunition was in "plain view" and

3   whether Officer Rodgers' observation of this evidence was sufficiently incriminating to justify the

4   further detention of Defendant Horn and to support a further search of his vehicle. "It is well

5   established that under certain circumstances the police may seize evidence in plain view without a

6   warrant." *Coolidge v. New Hampshire*, 403 U.S. 443, 465 (1971).   To establish a "plain view"

7   exception to a warrantless search (1) the initial intrusion must be lawful, (2) the discovery of seized

8   items must be inadvertent, and (3) the incriminatory nature of the evidence must be immediately

9   apparent. *United States v. Hudson*, 100 F.3d 1409, 1420 (9th Cir. 1996).

10      In this case, the initial intrusion was Officer Rodgers' conduct in stopping Defendant Horn's

11  vehicle. As stated above, this was a lawful intrusion based on the officer's valid basis for conducting a

12  traffic stop.   In the routine course of conducting this stop, Officer Rodgers was entitled to look into the

13  vehicle and observe and take note of whatever was in "plain view." Officer Rodgers' alleged

14  observation of the plastic bag containing the bullets was inadvertent since he observed it when he

15  looked into the cab of the vehicle. The incriminatory nature of the evidence was also immediately

16  apparent because Officer Rodgers knew that Defendant Horn was a convicted felon and the presence of

17  ammunition raised a reasonable suspicion to believe that a firearm was also present.

18      In *United States v. Spencer*, 1 F.3d 742, 745 (9th Cir. 1992), the police stopped a vehicle for a

19  broken headlight. As the stop was being made, one of the officers observed the defendant, who was the

20  passenger in the vehicle, bend forward in his seat. The passenger presented a county jail identification

21  card. The officer ran a computer check on the defendant which revealed that he had a conviction for

22  assault with a deadly weapon. The officers asked the vehicle occupants to step out of the car and

23  conducted a pat down search of the defendant which revealed an empty holster beneath his jacket. The

24  defendant denied that he had a gun. The officers, however, then searched the vehicle and found a pistol

25  under the passenger seat. The defendant was charged and convicted of being an ex-felon in possession

26  of a firearm. In holding that search and seizure was supported by probable cause, the court stated:

27              The police were also justified in believing that a firearm might be in the
                vehicle after they discovered the shoulder holster underneath Spencer's
28              jacket and Officer Lozier observed Spencer's concealing movements in

8

1   the automobile's front seat after Officer Collins stopped the vehicle.
2   Thus, the warrantless search of the stopped car was supported by probable
    cause.

3        In *United States v. Baker*, 850 F.2d 1365, (9th Cir. 1988), the court upheld the search of the

4   defendant's vehicle which revealed firearms after a lawful pat down search of the defendant, a

5   convicted felon, revealed that he had ammunition on his person.  In *United States v. Terry*, 400 F.3d

6   575, 581 (8th Cir. 2005), the officers made a valid stop of defendant's vehicle.  At the time of the stop,

7   the officers were aware that the defendant was subject to a protective order which prohibited him from

8   possessing a firearm.  Upon stopping defendant's vehicle, the officers observed a box of ammunition in

9   plain view on the dashboard of the truck.  The officers then searched the vehicle and discovered a

10  firearm.  In affirming the denial of the defendant's motion to suppress, the court stated that "[t]he legal

11  discovery of the contraband ammunition in Mr. Terry's vehicle sufficed to create probable cause for

12  Officer Hawk to believe that other parts of the vehicle contained additional contraband or evidence."

13       The parties dispute whether Officer Rodgers could have observed the plastic bag containing

14  ammunition when he made initial contact with the Defendant.  The stop occurred at nighttime on a rural

15  highway.  According to Officer Rodgers, Defendant's vehicle was illuminated by the high beam

16  headlights of his patrol vehicle which was parked approximately 7 yards behind Defendant's pick-up

17  truck.  The flashing red lights of the patrol vehicle also provided some illumination.  In addition,

18  Officer Rodgers testified that he shined his flashlight into the interior of the pick-up through the open

19  driver's side window.  Under these circumstances, the Court finds that there was sufficient lighting

20  which would have permitted Officer Rodgers to have observed objects inside the cab of the pick-up

21  truck at the time he initially contacted Defendant Horn.

22       The other disputed factual issue is whether Officer Rodgers could have seen the plastic bag

23  containing the ammunition from his vantage point when he made initial contact with Defendant Horn.

24  Officer Rodgers testified that he saw Defendant push the top or tip of the plastic back into the seat crack

25  to the right side of his leg and body.  Defendant Horn testified, however, that prior to and at the time of

26  the stop, the plastic bag was located under his right hip or buttock and would not have been visible to

27  Officer Rodgers.  Defendant Horn also testified that there were numerous other objects located in the

28  cab of the pick-up truck, including tools and food wrappers.  Officer Rodgers acknowledged that the

1    interior of the pick-up truck was messy.  The implication of this testimony is that the numerous other

2    items or objects inside the vehicle would have made it unlikely that Officer Rodgers would have

3    observed the plastic bag when he initially looked into Defendant's vehicle.  This assertion, however, is

4    overcome by Officer Rodger's testimony that his attention was attracted to the bag by Defendant's

5    attempt to place it in the crack between the seat back and cushion.

6         The dispute is one of credibility between Officer Rodgers' and Defendant's conflicting

7    testimony as to whether Officer Rodgers could have seen the plastic bag.  As a result of his alleged

8    observation, Officer Rodgers testified that he contacted Metro dispatch to request a "back-up" officer.

9    The audio disc recording between Officer Rodgers and Metro dispatch indicates that Officer Rodgers

10   requested "back-up" support based on his seeing "something" in the cab of the vehicle.  Defendant

11   argues that the dispatch recording contradicts Officer Rodgers' arrest declaration and testimony because

12   Officer Rodgers did not explicitly mention to dispatch that he had observed a plastic bag containing

13   bullets or ammunition in Defendant's vehicle.  The Court is not persuaded that Officer Rodgers' alleged

14   failure to explicitly describe to dispatch what he observed, i.e., a plastic bag containing bullets or

15   ammunition, undermines the veracity of his subsequent arrest declaration or hearing testimony.   This

16   evidence arguably also tends to support Officer Rodgers' testimony that he observed the plastic bag

17   with bullets when he initially made contact with the Defendant and based on that observation called for

18   back-up support.  Based on the foregoing, the Court concludes that Officer Rodgers' testimony that he

19   observed the plastic bag containing bullets at the time of his initial contact with Defendant Horn is

20   credible.

21        Having observed the plastic bag containing bullets and knowing that Defendant Horn was a

22   convicted felon, Officer Rodgers, at that point, had probable cause to believe that there was a firearm in

23   Defendant's vehicle which, if found, would constitute a violation of the law.  *United States v. Spencer*,

24   1 F.3d 742, 745 (9th Cir. 1992)*; United States v. Baker*, 850 F.2d 1365, (9th Cir. 1988); and *United*

25   *States v. Terry*, 400 F.3d 575, 581 (8th Cir. 2005).  It was, therefore, reasonable and lawful for Officer

26   Rodgers to summons the assistance of a "back-up" officer and to thereafter detain the Defendant until

27   Officer Swanson arrived and Officer Rodgers could proceed with a search of the vehicle to determine if

28   there was a firearm located in Defendant's vehicle.

1    Upon returning to Defendant's vehicle after the arrival of Officer Swanson, Officer Rodgers
2    located the plastic bag of ammunition and brass knuckles on the seat in the pick-up truck.  After a
3    search of the interior of the vehicle did not reveal any firearm, Officer Rodgers proceeded to inspect and
4    search the rear bed of the pick-up truck where he found the rifle which was covered or concealed
5    beneath clothing.  Based on his observation and discovery of the plastic bag of ammunition, Officer
6    Rodgers had probable cause to search the other parts of the vehicle to look for a firearm or other
7    contraband to be found therein.  *United States v. Ross*, 456 U.S. 798 (1982).

8                                              **CONCLUSION**

9          Based on the foregoing, the Court finds that the plastic bag containing bullets was in plain view
10   and was observed by Officer Rodgers when he made initial contact with Defendant Horn after validly
11   stopping his vehicle for a violation of Nevada traffic laws – an inoperative headlight.  Officer Rodgers'
12   observation of the ammunition, combined with his knowledge that Defendant Horn was a convicted
13   felon, gave Officer Rodgers probable cause to believe that a firearm was located in the vehicle and,
14   therefore, in Defendant's possession in violation of the law.  Officer Rogers was, therefore, justified in
15   detaining Defendant Horn until another officer arrived for back-up security and to then proceed to
16   search the vehicle for the presence of a firearm.   Therefore, for good cause shown,

17          **IT IS HEREBY RECOMMENDED** that Defendant's Motion to Suppress be **DENIED.**
18          DATED this 3rd day of November, 2005.

20                                                        _____
21                                                        GEORGE FOLEY, JR.
                                                          UNITED STATES MAGISTRATE JUDGE

                                                    11